Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 3093 | **DATE** | 7/8/2010 |
| **CASE TITLE** | Terry vs. Cook County Department of Corrections, et al. | | |

**DOCKET ENTRY TEXT**

Before the Court is a motion to bifurcate and stay *Monell* discovery [70], filed by Defendants Cook County and Sheriff Thomas Dart. For the reasons set forth below, the Court denies Defendants' motion [70].

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

## STATEMENT

In May 2009, Plaintiff Shanika Terry, individually and on behalf of her deceased son, filed suit in Illinois state court against Defendants. Plaintiff asserts § 1983 claims against Defendants, alleging that while she was a pre-trial detainee in the Cook County Department of Corrections, Defendants denied her adequate medical care in violation of the Fourteenth Amendment. Plaintiff also asserts wrongful death and other state law claims arising out of the alleged denial of adequate medical care, which she asserts resulted in the still birth of her son. Finally, Plaintiff seeks recovery against the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1976), alleging that municipal customs, policies, and practices caused the alleged constitutional violations. The County has moved for bifurcation of Plaintiff's *Monell* claims and to stay discovery and trial on those claims until the claims against the individual officers are resolved.

**I.  Background**

Plaintiff was taken into custody as a pre-trial detainee by the Cook County Department of Corrections on approximately July 11, 2008, at which time Plaintiff was twenty-six weeks pregnant. On July 22, 2008, Plaintiff began having abdominal pain and cramping, began vomiting, and was bleeding vaginally. Plaintiff alleges that she asked nurses and guards for assistance, but her repeated requests were ignored for a number of hours. Plaintiff was eventually transferred by ambulance to St. Anthony's Hospital at approximately 11:00 pm on July 22nd. When she arrived at the emergency room, the nurses treating her were unable to locate a heartbeat for Plaintiff's unborn child, and advised her that her unborn child had died. Plaintiff was diagnosed with abruption placenta and disseminated intravascular coagulation (DIC); she suffered anemia and injury to her kidneys.

**II.  Analysis**

Federal Rule of Civil Procedure 42(b) authorizes federal courts to order a separate trial of one or more separate issues or claims if separation (or bifurcation) is warranted "[f]or convenience, to avoid prejudice, or to expedite

and economize." Bifurcation may be appropriate if one or more of the Rule 42(b) criteria is met. See, *e.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). District courts approach bifurcation motions with a pragmatic mindset, and the district court's exercise of its "'considerable discretion to order the bifurcation of a trial'" will be set aside on appeal "'only upon a clear showing of abuse.'" *Id.* at 364-64 (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000)).

Motions to bifurcate *Monell* claims are now commonplace, and "[c]ourts in our district have both granted and denied similar motions by the City." *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008). "Thus, there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases" (*Elrod v. City of Chicago*, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007)), with the result in each instance "reflect[ing] a case-specific assessment of the advantages and disadvantages of bifurcation." *Ojeda-Beltran*, 2008 WL 2782815, at *1.

The spate of bifurcation motions and the willingness of many judges to grant them stems in large part from the recognition that, in many instances, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007); see also *Ojeda-Beltran*, 2008 WL 2782815, at *2 (noting that litigating plaintiffs' *Monell* claim will be a "more burdensome and time-consuming task" than litigating plaintiffs' claims against the individual officer defendant). Here, the claims against the County alleged in Plaintiff's complaint refer to a sufficiently wide-ranging set of potentially relevant policies and practices that the characterizations of the *Monell* claims in *Moore* and *Ojeda-Beltran* may well apply to this case as well.

However, judges in this district have echoed Plaintiff's concerns about delay of the case and possible prejudice to Plaintiff from that delay. The Court also recognizes that Plaintiff has the right to select the claims that she wishes to pursue, and that even if pursuing a *Monell* claim may have minimal pecuniary reward, the potential to deter future official misconduct is itself "a proper object of our system of tort liability." *Cadiz v. Kruger*, No. 06-cv-5463, Memorandum Opinion and Order, at 11, 16 (N.D. Ill. Nov. 29, 2007); see also *Ojeda-Beltran*, 2008 WL 2782815, at *4 ("there are non-economic benefits that can be obtained through suing the City that are unavailable through the suit of Defendant Officers").

Additionally, the Seventh Circuit recently held that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Dept.*, 588 F.3d 445, 456 (7th Cir. 2009) (case in which both individual liability claims and *Monell* claims were tried together). In *Thomas*, the Seventh Circuit specifically addressed the holding in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), and stated that to interpret the holding in *Heller* to constitute a "rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*" is "an unreasonable extension of *Heller*." 588 F.3d at 455. In *Thomas*, the court of appeals indicated that to evaluate potential *Monell* liability in the absence of individual liability, a court should consider "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.* at 456. The court further noted that, in certain instances, a constitutional violation could solely be tied to an unconstitutional municipal policy if it could be shown that the public entity's "policies caused the harm, even if the officer was not individually culpable." *Id.* at 455. Thus, it is possible for there to be municipal liability even in the absence of underlying individual liability. See also *Bradley v. City of Chicago*, 2010 WL 432313, at *2 (N.D. Ill. Feb. 3, 2010).

Defendants argue that this case is distinguishable from *Thomas*. Interestingly, none of the cases cited by Defendants in favor of bifurcation were issued post-*Thomas*, nor has the Court found any published decisions

| STATEMENT |
|---|

to that effect. Beyond the dearth of cases favoring bifurcation post-*Thomas*, on the current record before the Court, it is simply too early to tell whether Plaintiff's claims are analogous to those in *Thomas* – which also is a deliberate indifference case – or more like the claims of plaintiffs in excessive force cases where bifurcation routinely has been granted. Although they attempted to do so, Defendants have not sufficiently explained why a verdict in favor of the individual officers and against the County would be an inconsistent verdict in this case, as contemplated by *Thomas*. For instance, Defendants claim that "[t]here is no issue about medical request forms or anything else that would impute lack of knowledge of the plaintiff's condition due to a custom or practice of the County or Sheriff." However, as Plaintiff pointed out in her response brief, and Defendants failed to address in their reply, "a jury could find that the officers and medical professionals simply could not respond to plaintiff's requests for medical assistance in a timely fashion because of underfunding, which caused understaffing." Pl. Resp. at 8. Put another way, Plaintiff argues that a jury could find Defendants liable for creating the environment in which the officers and medical professionals did not have the resources to do anything more than they did.

Bifurcation also may add unnecessary complexity and confusion to the discovery process. Defendants argue that Plaintiff already is overstepping the discovery bounds in her discovery requests and that the evidence that Defendants deem *Monell* evidence will have "no bearing" on the individual liability in this case. Thus, there already are discovery disputes brewing. If the Court were to grant the bifurcation motion, the need for the parties to separate *Monell* evidence from individual liability evidence may further complicate rather than simplify these proceedings. Admittedly, in denying bifurcation, Defendants will be required to disclose documents, and possibly submit to depositions, related to several types of policies that were maintained by the County and Sheriff. However, to the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary upon the presentation of an appropriate motion. See *Wilson v. City of Chicago*, 2008 WL 4874148, at *2 (N.D. Ill. July 24, 2008) (finding that court had no reason to believe that a plaintiff's *Monell* discovery would be a fishing expedition and was narrowly tailored where the plaintiff alleged that the defendant's training procedure was deficient in a specific way).

Finally, all of the time and effort that Defendants propose will be saved in discovery, trial preparations, and trial time is purely speculative. If the Court were to follow Defendants' proposed schedule, there might be a need for two rounds of discovery, two trials to prepare for, and two trials that would include much redundant evidence. Such a result would excessively prolong this case and would not serve judicial economy. See, *e.g.*, *Cadiz,* 2007 WL 4293976, at *5 (stating that "a stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date").

### III.     Conclusion

For the reasons stated above, Defendants' motion to bifurcate and stay *Monell* discovery [70] is respectfully denied. This case is referred to Magistrate Judge Brown for all further discovery supervisions, including any discovery motions.